## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL NO. 20-063 |
| | : | |
| JONATHAN NYCE, | : | |

## MEMORANDUM OPINION

*Pro se* Defendant Jonathan Nyce is charged with offenses related to the sale of Tumexal and Naturasone, drugs that he invented and sold to individuals, claiming that they cured dog cancer.  He seeks to admit the expert testimony of: (1) Thomas Conroy, a dog owner from California; (2) Bruce and Jan Clark, Doberman breeders; and, (3) himself.  The Government has moved to exclude these witnesses' proffered testimony.  For the reasons that follow, the Government's motion will be granted.

### I.    BACKGROUND

On February 4, 2020, a grand jury in the Eastern District of Pennsylvania charged Defendant with: (1) one count of wire fraud, in violation of 18 U.S.C. § 1343; (2) two counts of delivery of misbranded animal drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352(o), and 333(a)(2); and, (3) two counts of misbranding animal drugs while such drugs were held for sale, in violation of 21 U.S.C. §§ 331(k), 352(o), and 333(a)(2).  As charged in the indictment, Defendant claimed that his drugs cured dogs of cancer, or otherwise prolonged the life of dogs suffering from cancer.  Defendant told his customers that their dogs were being treated as part of a clinical trial; according to the indictment, however, Defendant never received regulatory approval from the Food and Drug Administration ("FDA") to conduct such a trial.  In

1

fact, Defendant had been sent warning letters by the agency informing him that his drugs had not been evaluated by experts with scientific training, and that marketing the drugs would violate the Food, Drug and Cosmetic Act.  The specific charges at issue here stem from statements Defendant made to a customer of his, "C.H.," during August 2015.

Shortly before the original trial date, the Government filed a motion in limine seeking to exclude evidence concerning the efficacy of Defendant's drugs.  Defendant filed a response, arguing that such evidence was relevant to whether he had an "intent to defraud or mislead," the requisite *mens rea* under 21 U.S.C. § 333(a).  The Government's motion was granted in part and denied in part.  It was denied as to any documentary evidence probative of Defendant's intent published before August 2015 (before he sold the canine drugs to C.H.); it was granted as to documentary evidence published after that point in time.

At the hearing on the Government's motion in limine, Defendant indicated that he would also seek to introduce the testimony of one Thomas Conroy, and of Bruce and Jan Clark, individuals whose dogs he purportedly cured of cancer.  It should be noted that Defendant has never provided the Government with formal notice of who he intends to call as an "expert," and neither has he provided a "written summary . . . describ[ing] . . . the [expert] witness[es'] qualifications" as required under Federal Rule of Criminal Procedure 16(b)(1)(C).  The Government is, accordingly, left to predict, based on statements Defendant made during the hearing, that he is seeking to introduce experts: (1) Conroy; (2) the Clarks; (3) "additional dog owners"; and, (4) Defendant himself.  It now argues that none of these proposed "experts" are qualified under the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702.  It argues further that if Defendant is proposing

2

himself as an expert, the methodology underlying the topic of his testimony—the "kill switch" tumor theory—is unreliable.

## II.  LEGAL STANDARD

The admissibility of expert testimony is subject to the standard articulated by the Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).  The *Daubert* standard is codified in Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  This rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability, and fit."  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  Qualification requires "that the witness possess specialized expertise."  *Id.* To be reliable, the expert's opinion must be premised on more than mere "'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert*, 509 U.S. at 590). Finally, the expert's testimony must "fit" the case at hand, that is, "must be relevant for the purposes of the case and must assist the trier of fact."  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider*, 320 F.3d at 405).  When a party challenges an expert's opinions pursuant to Rule 702, the proffering party bears the burden of demonstrating by a preponderance of the evidence that the opinions of its proposed expert are admissible.

*Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417-18 (3d Cir. 1999).

## III.    DISCUSSION

### A.  Conroy and the Clarks

Defendant proffered Conroy and the Clarks as "experts" who would testify regarding the cancer treatment Defendant provided to their dogs.  In particular, Defendant anticipates that Conroy and the Clarks will "identify x-rays and medical reports associated with their respective cases [of dog cancer], made by their respective veterinarians."

The Government asserts that these individuals are not qualified to testify as experts.[1]  To qualify as an expert, a witness must have "specialized knowledge" regarding the area of testimony.  *Schneider*, 320 F.3d at 404.  The basis of this specialized knowledge "can be practical experience as well as academic training and credentials."  *Am. Tech. Resources v. United States*, 893 F.2d 651, 656 (3d Cir. 1990).  The Third Circuit has interpreted the specialized knowledge requirement liberally, and has stated that this policy of liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts."  *In re Paoli*, 35 F.3d at 741.  However, "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman."  *Aloe Coal Co. v. Clark Equip. Co.*, 816 F.2d 110, 114 (3d Cir. 1987).

Because the Government did not receive any reports or resumes of Conroy or the Clarks

---

[1] The Government also argues that Conroy and the Clarks are not "proper witnesses to authenticate and introduce" the medical reports and x-rays.  Though this argument may be properly made at trial, it does not affect the *Daubert* analysis.  *In re Paoli*, 35 F.3d at 748-49.  Defendant misconstrues the Government's argument and asserts that the x-rays and medical records are admissible because they fall under an exception to the rule barring hearsay.  But the Government is not challenging the records' admissibility; it is challenging the witnesses' ability to authenticate the documents.

from Defendant, the Government conducted its own internet searches of these potential witnesses to support its arguments.  The Court takes judicial notice of the facts resulting from the Government's research.[2]

First, the Government failed to find any evidence qualifying Thomas Conroy as an expert.  According to the Government, a review of Conroy's LinkedIn page reveals that he is the "Co-Founder, Chief Executive Officer and Board Chairman" of "MedSign," a company that uses homeowners' televisions to connect them to healthcare providers.  According to Conroy's MedSign corporate biography and LinkedIn page, his previous experience includes working as a director in commercials, reality shows, and sitcom pilots.  He also has experience as the CEO of a cosmetics company and previously served in the United States Air Force and the National Reconnaissance Office.  According to his LinkedIn page, Conroy has a degree in Electronic Engineering from Fairleigh Dickinson University and an M.B.A. from Phoenix University.  The Government was unable to find, and Defendant did not produce, evidence that Conroy has experience in any medical or scientific field.  Conroy does not list any animal-related certifications or experience on his publicly-available websites.

As to Bruce and Jan Clark, the Government found that the couple own "Unique Dobermans," a company that breeds and sells Dobermans.  According to the Government, the company's website states that Bruce Clark's experience includes farm work, ranching, "working

---

[2] Federal Rule of Evidence 201 provides that a court may take judicial notice of facts "not subject to reasonable dispute because [they] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Judicial notice is appropriate here because Defendant does not dispute the accuracy of the Government's research in his Response, and there is otherwise no indication that the websites cited by the Government are inaccurate.  *See, e.g., Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (taking judicial notice of "public[ly] accessible websites" where defendant did not oppose or "otherwise contend that the document[s] [are] inaccurate.")

mules," and experience as both a licensed hunting guide and semi-pro skier.  Bruce Clark's online biography indicates he "worked with his veterinarian uncle Bob and aunt Nina" but the Government was unable to locate more specific information about his work experience in the field of veterinary medicine.  The Government was also unable to find any educational experience or certifications for Bruce Clark.  According to the Unique Dobermans website, Jan Clark's experience involves breeding horses and cattle.  No educational background or professional certifications were listed.

Defendant did not rebut any of the Government's points regarding his failure to show that these individuals are qualified to testify as experts.  Instead, Defendant cites to case law about an accused's right to call witnesses in his defense. *Chambers v. Mississippi*, 410 U.S. 284 (1972). Although defendants do have a right to call fact witnesses in their defense (subject to any motions in limine or court orders), they have no right to call lay persons as experts.  Indeed, in *Daubert*, the Supreme Court appointed trial courts as "gatekeepers" to prevent unqualified, so-called experts from improperly swaying a jury.

Conroy and the Clarks are not qualified to serve as experts in this case, which concerns Defendant's alleged misstatements in relation to his sale of cancer drugs for dogs.  As discussed *supra*, Defendant anticipates that Conroy and the Clarks will discuss their dogs' x-rays and medical reports after receiving medication from Defendant.  Nothing in Conroy's resume suggests that he has expertise in animal science or medicine, much less the ability to interpret veterinarian medical records.  And while the Clarks may have some experience in breeding animals, nothing in their biographies suggests that they are qualified—or even able, as a veterinarian would be—to similarly interpret such records.  Defendant has not raised any

6

arguments to the contrary.  He has therefore not met his burden under *Daubert*.[3]  *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (finding that proffered expert, a salesman, was not qualified because he had no knowledge, experience, or training in matters regarding engineering); *Yazujian v. PetSmart*, 729 F. App'x 213, 216 (3d Cir. 2018) (finding that proposed expert was not qualified to testify about retail safety because he had no academic background, no formal training, and limited experience in the field).[4]

### B.  Defendant Jonathan Nyce

Defendant also intends apparently to take the stand to testify regarding the efficacy of his drugs.  The Government argues that Defendant should not be permitted to testify as an expert because the methodology for his so-called "kill switch" tumor theory is unreliable.

To satisfy the reliability requirement, "the expert must have good grounds for his or her belief."  *In re Paoli*, 35 F.3d at 742 (quotation marks and citation omitted).  *Daubert* lists several factors to be considered in evaluating whether a particular scientific methodology is reliable,

---

[3] The Government also argues that Conroy and the Clarks should not be permitted to testify as experts because: (1) Conroy invested $250,000 of his own money in Defendant's research, thus preventing him from serving as an impartial expert; and, (2) the proffered experts' testimony will not be helpful to the jury.  Because Conroy and the Clarks will be precluded from testifying as experts on the ground that they lack the proper qualifications, the Court need not reach these arguments here.

[4] Defendant argues that Conroy and the Clarks have "firsthand knowledge of the diagnoses they received from their veterinarians, and their interaction with Professor Nyce regarding his research program [is] essential in order for them to explain why they elected to enter Professor Nyce's research program."  Similarly, Defendant argues that these individuals' testimony is "necessary to counter the testimony of CH and offer the [D]efendant's version of the facts.  Without such testimony, the jury will only hear one side of this case."

All of these arguments support consideration of Conroy and the Clarks as fact witnesses, not expert witnesses. Nothing in this opinion, which only concerns the admissibility of expert witnesses under the *Daubert* standard, prevents Defendant from calling Conroy and the Clarks as fact witnesses; though it should be noted that the Government may at some point file pretrial motions to preclude the testimony of these witnesses or object at trial to their testimony.

including: (1) whether the expert's hypothesis has been tested; (2) whether the methodology has been peer reviewed and published; (3) how often the methodology yields erroneous results; (4) whether controls over the methodology exist and are maintained; and, (5) whether the methodology has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593; *In re Paoli*, 35 F.3d at 742.[5]

The Government argues that allowing Defendant to testify as an expert about his dog cancer theory would be improper because his hypothesis has never been tested. It further argues that other facts indicate the unreliable nature of Defendant's theory, including that his "research" is based on anecdotal evidence, and his experiments did not involve any controls (*i.e.*, no placebos).

In response, Defendant argues that: (1) his cancer theory has been "tested," including by treatment of Conroy and the Clarks' pets; (2) "controls/placebos were unnecessary" at the early stage of his research; and, (3) "the fact that [his] 'theory' has been reduced to an equation [] demonstrates its reliability." Defendant then refers to numerous exhibits he attaches to his Response including: testimonials from dog owners about their pets' supposed recovery from cancer; scientific papers published by Nyce; other evidence supporting Nyce's qualifications as a scientist, such as grants he received;[6] documents Nyce insists "irrefutably" show that he was not

---

[5] The Government argues that Defendant's methodology is problematic as it raises numerous "red flags" under the standard articulated in *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012). As *Newell*, a Sixth Circuit case, is not controlling, this analysis will center on those factors discussed in *Daubert* and other Third Circuit case law.

[6] Defendant argues extensively that he should be permitted to testify as an expert because he is qualified to serve as one. But the Government in its Motion does not dispute Defendant's qualifications; it disputes his methodology. The Government also argues that Defendant's testimony does not "fit" the needs of the case because it does not meet the "bare relevance" standard and therefore would not be helpful to the jury. In that Defendant's methodology is

required to follow FDA protocols; and, evidence purportedly discrediting the Government's witness, C.H.

Taking the factors outlined by the Supreme Court in *Daubert* as a whole, Defendant's theory is too unreliable for him to testify as an expert regarding the efficacy of his own drugs.[7] Defendant cannot be said to have properly "tested" whether his drugs cure dog cancer simply based on isolated anecdotes and absent provision of placebos.  *See, e.g.*, *Playtex Prod., Inc. v. Procter & Gamble Co*., 2003 WL 21242769, at *10 (S.D.N.Y. May 28, 2003), *aff'd*, 126 F. App'x 32 (2d Cir. 2005) (excluding expert whose conclusion was "based on anecdote, [and] ha[d] not . . . [been] tested or verified.")  Nor have Defendant's drugs been tested by other qualified professionals.  And, because Defendant has not subjected his experiments to FDA standards, it is impossible to tell "the frequency by which [his] methodology leads to erroneous results."  Finally, Defendant has not provided evidence that his dog cancer theory is generally accepted in the scientific community; rather, his own view that he is a "soldier in the war against cancer" constantly thwarted by the FDA and "Big Pharma," suggests the opposite.[8]

Defendant cannot testify as an expert witness at his trial.  He may, however, testify as a *fact* witness with respect to topics within his personal knowledge, subject to rulings made on

---

unreliable, however, it is not necessary to address the question of qualification or fit.

[7] Even if Defendant's methodology were reliable, he would still not be permitted to testify as an expert at trial.  This is because his proffered "expert" testimony is only relevant insofar as it speaks to whether Defendant had a guilty state of mind at the time of the transaction.  But the Federal Rules of Evidence bar expert witnesses from stating an opinion about whether a defendant had the requisite *mens rea* of an offense.  Fed. R. Evid. 704(b).

[8] The parties dispute whether Defendant's theory has been subject to peer review, and seem to disagree about what the term "peer review" means.  This point need not be reached because all of the other reliability factors overwhelmingly militate in favor of exclusion.

pretrial motions or objections made at trial.  *See Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 643 n.5 (3d Cir. 1987) (upholding motion to strike testimony made at trial).

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*
_____
**WENDY BEETLESTONE, J.**

10